UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENA A. DIGGS,

    Plaintiff,       Civil Action No. 16-10719
                                Honorable Arthur J. Tarnow
        v.       Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NO. 14, 15]

Plaintiff Jena A. Diggs appeals a final decision of defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 15] be **GRANTED**;
- Diggs's motion [ECF No. 14] be **DENIED**; and
- the Commissioner's decision be **AFFIRMED**, pursuant to sentence

four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Diggs's Background and Claimed Disabilities

Born February 22, 1966, Diggs was 47 years old when she submitted her applications for disability benefits on October 24, 2013. [ECF No. 11-3, Tr. 87]. She has a high school education, and has past relevant work as an office manager and dental assistant; she held these positions while working in a dental office from October 2000 to October 2013. [ECF No. 11-2, Tr. 58-60; ECF No. 11-6, Tr. 231]. Diggs alleges that she is disabled by cardiomyopathy, Graves' disease, kidney failure, emotional problems, learning problems, thyroid problems, and arthritis in spine and hands, with an onset date of October 1, 2013.[1] [ECF No. 11-3, Tr. 87]. During testimony, Diggs also alleged episodes of memory loss and mental confusion. [ECF No. 11-2, Tr. 64; ECF No. 14, PageID 527].

After a hearing on June 16, 2015, which included the testimony of Diggs and a vocational expert ("VE"), the ALJ found that Diggs was not disabled. [ECF No. 11-2, Tr. 40-8, 53-86]. The Appeals Council denied

---

[1] The alleged onset date was originally October 1, 2012; however, at the hearing Diggs amended the alleged onset date to October 1, 2013. [ECF No. 11-2, Tr. 59].

2

review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-4]. Diggs timely filed for judicial review. [ECF No. 1].

B.     **The ALJ's Application of the Disability Framework Analysis**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2] Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

3

set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Diggs was not disabled. At step one, he found that Diggs had not engaged in substantial gainful activity since her alleged onset date. [ECF No. 11-2, Tr. 42]. At step two, he found that Diggs had the severe impairments of "cardiomyopathy, Graves' disease, hypertension, kidney disease, and right foot fracture." [*Id.*]. At step three, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.,* Tr. 43].

Between the third and fourth steps, the ALJ found that Diggs had the RFC to perform sedentary work with the following exception:

4

> [T]he claimant is limited to simple, routine, repetitive tasks free of fast-paced production requirements involving only simple, work related decisions and routine work place changes. She cannot have exposure to temperature extremes, moving machinery, or unprotected heights. She can occasionally bend, turn, couch, stoop, climb, crawl and kneel. She cannot walk greater than one city block.

[ECF No. 11-2, Tr. 43]. At step four, the ALJ found that Diggs could not perform any past relevant work. [*Id.*, Tr. 46]. With the assistance of VE testimony [*Id.*, Tr. 81], the ALJ determined at step five that based on Diggs's age, education, work experience and RFC, she could perform the requirements of representative occupations such as document preparer, call-out operator, and table worker, and that those jobs existed in significant numbers in the economy, rendering a finding that she was not disabled. [*Id.*, Tr. 47].

## II. STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

5

(6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

### III.   ANALYSIS

Diggs argues that the ALJ failed to fully develop the record in adherence with 20 CFR § 404.1512(d); that this matter should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of new evidence; and that the ALJ's credibility finding was not supported by substantial evidence. These arguments are without merit, and the decision of the ALJ should be affirmed.

## A.

Donald C. Jones, M.D., was Diggs's primary physician who treated her and referred her to specialists for various impairments. In April 2014 and February 2015, Dr. Jones opined that Diggs was unable to work. [ECF No. 11-7, Tr. 437, 421]. In his 2014 statement, Dr. Jones cited anxiety and "loss of memory at times" as the basis for his opinion. [*Id.*, Tr. 438]. In 2015, Dr. Jones stated that Diggs had cardiomyopathy, chronic kidney disease, Graves' disease, cataracts in both eyes, and recent surgery for a defibrillator due to heart disease. [*Id.*, Tr. 421]. He opined that she was unable to work "at this time" due to those conditions. [*Id.*]. Dr. Jones did not provide an assessment of Diggs's specific functional capacity, but stated that he could be contacted with any further questions. [*Id.*].

The ALJ gave little weight to the opinion of Dr. Jones, reasoning that "the record does not support his claim that the claimant is unable to perform any work."[4] [ECF No. 11-2, Tr. 46]. Diggs argues that ALJ failed to fully and fairly develop the administrative record by not recontacting Dr.

---

[4] The ALJ could have also reasoned that the question regarding whether Diggs is disabled is an issue reserved for the Commissioner. *Brock v. Comm'r of Soc. Sec.,* 368 F. App'x 622, 625 (6th Cir. 2010). Diggs acknowledges this law. [ECF No. 14, PageID 541]. Thus, her underdeveloped argument that the ALJ erred in failing to given controlling weight to Dr. Jones's opinion under the treating physician rule is without merit. *Brock*, 368 F. App'x at 625.

7

Jones to determine his opinions of Diggs specific limitations and the medical evidence he relied on in reaching his opinion that Diggs was disabled. [ECF No. 14, PageID 541]. The Court disagrees.

As a general rule, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). And while ALJ's were previously required to recontact medical sources if the evidence they provided was inadequate, regulations that became effective in March 2012 deemed the decision to recontact to be a matter within the discretion of the ALJ. 20 C.F.R. § 404.1520(b); *Hollis v. Comm'r of Soc. Sec.,* No. 13-13054, 2015 WL 357133, at *23 (E.D. Mich. Jan. 27, 2015) ("ALJs now have discretion to decide whether to recontact.").

Thus, it was Diggs's responsibility to assure that Dr. Jones's opinion adequately described her limitations and the bases for such, and the ALJ was not required to recontact Dr. Jones to correct any deficiencies of that opinion.

**B.**

8

Addressing Diggs's allegations of memory loss, the ALJ held that she "presented no objective medical findings or tests to support a conclusion that this issue is a medically determinable impairment." [ECF No. 11-2, Tr. 43]. Diggs thus submitted to the Appeals Council a report from Michael Czarnota, Ph.D., a neuropsychologist, who evaluated Diggs's alleged memory loss after the hearing before the ALJ.[5] [ECF No. 11-2, Tr. 31-33]. Generally, if the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Diggs asserts that this matter should be remanded under sentence six of Section 405(g) for consideration of Dr. Czarnota's report. She bears the burden of demonstrating that remand is warranted, *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2002), and she cannot meet it.

Sentence six of the Act permits remand only where a subsequent adjudicator is presented with "*new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence in to the record in a prior proceeding." § 405(g) (emphasis added). Diggs must show

---

[5]Diggs also submitted additional evidence to the Appeals Council regarding her visits with cardiologist, Bischan Hassunizadeh, M.D, but she focuses her argument for a sentence six remand on Dr. Czarnota's neuropsychological report.

9

that the records in question are "new," as in "not in existence or available to the claimant at the time of the administrative proceeding." *Foster,* 279 F.3d at 357 (internal quotation marks and citation omitted). Evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different decision if the new evidence were considered. *Id.* With respect to the "good cause" requirement, the Sixth Circuit "has taken a harder line" and requires a claimant to "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver*, 804 F.2d at 966.

There is no dispute that Dr. Czarnota's report is "new" within the meaning of sentence six, but Diggs does not show the report is material. After conducting a battery of tests, Dr. Czarnota concluded that the results "contained evidence for motor slowing, impaired perceptional reasoning and verbal list learning limitations. However, her degree of psychological distress represented the primary finding at this time and was one that requires precedence in treatment." [ECF No. 11-2, Tr. 33]. While the testing suggested mild to moderate deficits, it also revealed "a consistent willingness to acknowledge and perhaps exaggerate her difficulties," and her "exaggerated response style" reflected "an effort to seek help with psychological stressors." [*Id.*, Tr. 32-33]. Dr. Czarnota did not make a specific finding regarding Diggs's memory loss; he merely recommended

10

that she "use a memory log for improved retention and sense of control." [*Id.*, Tr. 33].

Diggs exaggerates Dr. Czarnota's report, stating that it demonstrates objective clinical and diagnostic findings from an acceptable medical source demonstrating that she has memory loss and significant mental health issues. [ECF No. 14, PageID 542; ECF No. 16, PageID 577]. To the contrary, Dr. Czarnota's findings do not show significant memory loss or mental health deficits that would lead the ALJ to have reached a different decision. Although the ALJ rejected Diggs's claim that she suffered extreme limitations, he did not deny that she may have memory problems, and he acknowledged that "her physical issues may have caused confusion and concentration issues, and therefore,[] provided mental limitations in the RFC." [ECF No. 11-2, Tr. 43]. Specifically, the RFC limited Diggs to simple, routine, repetitive tasks that involved only simple, work related decisions and routine work place changes. [ECF No. 11-2, Tr. 43]. There is not a reasonable probability that the ALJ would have determined that Dr. Czarnota's findings established the need for a more restrictive RFC, and Diggs therefore has not shown materiality.

Regarding the final factor, the Commissioner wrongly asserts that Diggs "appears to satisfy the good cause requirement" because she

11

submitted the report to the Appeals Council. [ECF No. 15, PageID 560]. The fact that Diggs submitted the material to the Appeals Council is immaterial. In order to satisfy the good cause requirement, Diggs was required to show that she could not have obtained a neuropsychological report prior to the hearing before the ALJ. *Oliver*, 804 F.2d at 966 ("Oliver does not have a valid reason for his failure to obtain a right quadricepts biopsy, a neuro-psychological examination, or a university neurologist evaluation prior to the hearing. Therefore, the good cause requirement has not been met."). Good cause is met when new evidence arises from continuing medical treatment, but not when the evidence was "generated merely for the purpose of attempting to prove disability." *Koulizos v. Sec'y of Health & Human Servs.*, 802 F.2d 458 (6th Cir. 1986).

Diggs did not address the good cause requirement, but she does assert that the "referral was occasioned by [her] issues of reported memory loss possibly related to a 2012 stroke or seizure." [ECF No. 14, PageID 542; *see also* ECF No. 11-2, Tr. 31 (indicating that the referral related to memory issues following possible stroke and seizure)]. Since Dr. Czarnota's report was generated three years after the possible stroke or seizure, it appears to have been generated merely for the purpose of attempting to prove disability, and good cause has not been shown.

Since materiality and good cause have not be shown, remand under sentence six is not warranted.

### D.

Diggs argues that the ALJ erred in evaluating her credibility in regard to her testimony about her pain and limitations, and that the credibility finding was not supported by substantial evidence. [ECF No. 14, PageID 544]. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. Here, the Court finds no compelling reason to disturb the ALJ's credibility determination.

Diggs argues the "ALJ based his credibility findings on a few of the medical records that he cherry picked from the [record] to show an overall ability to function that plaintiff testified she does not possess." [*Id.*]. A "cherry picking" argument is "seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). And here, the ALJ's credibility findings are supported by the record.

The ALJ explained:

13

> The claimant was diagnosed with Graves' disease and is now taking medication for hypothyroidism. She received an ICD for her diagnosis of cardiomyopathy; however, her cardiologist indicated her condition is stable. She has had some issues with her kidney/renal function, but there are no treatment records from a nephrologist since her hospitalization in October 2013 and her condition appears stable.

[ECF No. 11-2, Tr. 46]. Consistent with the ALJ's explanation, Ali Orandi, M.D., indicated in an August 2013 note that Diggs was taking Hyperthyroid, but that she had not been taking it regularly. [ECF No. 11-7, Tr. 296]. In a September 2014 medical note from cardiologist Bischan Hassunizadeh, M.D., he stated that her cardiomyopathy was stable. [*Id.,* Tr. 368]. And although Diggs had acute kidney failure in 2013, there are no treatment records concerning her kidneys since then. [*Id.*, Tr. 257, 302, 309-10].

The ALJ also found that Diggs's allegation that she has extreme memory problems and extreme exhaustion, and that she spends most of her days in bed were not supported by the medical evidence. [ECF No. 11-2, Tr. 46]. Diggs asserts that her testimony and written statement "contained limitations of memory and attention that would exclude full time competitive work." [ECF No. 14, PageID 544, citing ECF No. 11-2, 53-86; ECF No. 11-6, Tr. 176-183]. But the ALJ did craft an RFC to account for her mental issues, and Diggs does not cite any specific evidence

14

establishing that she requires a more restrictive RFC. That is her burden. *Preslar*, 14 F.3d at 1110.

Diggs refers to the opinion of B. D. Choi, M.D., a non-examining medical consultant who found that she had a RFC compatible with some light work. [ECF No. 14, PageID 545, citing ECF No. 11-3, Tr. 96-97]. Diggs suggests that the ALJ erred in giving little weight to Dr. Choi's opinion. [*Id*.]. But the ALJ crafted an RFC that was *more* restrictive than the one suggested by Dr. Choi, and Diggs cannot argue that she was harmed by that decision. [ECF No. 7-2, Tr. 43, 46].

The ALJ's credibility determination is supported by substantial evidence, and Diggs has not provided a compelling reason to overturn it.

### III.  CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 15] be **GRANTED**; that Diggs's motion [ECF No. 14] be **DENIED**; and that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

                                                    s/Elizabeth A. Stafford
                                                    ELIZABETH A. STAFFORD
Dated: January 30, 2017             United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page

limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 30, 2017.

s/Karri Sandusky on behalf of
MARLENA WILLIAMS
Case Manager
